## BYRNE v. WEEKS.

September, 1865.

Affirming 7 *Bosw.* 372.

The owner of a vessel, in an action brought by him for freight money against the assignee of a bill of lading which the owner has signed, is estopped from setting up a state of facts different from that which he has set forth in the bill of lading, and relying upon which the assignee has paid for the property described therein.

In such an action where the quantity of goods of one description in the cargo had exceeded, and of another had fallen short of the amount stated in the bill of lading, and the assignee thereof had accepted and received such portion of the former class as the bill of lading called for, and the whole of the latter class on board, (or as much of each as the master of the vessel would deliver except he take goods not covered by the bill of lading). *Held*, that he could set up a counter-claim for damages for the non-delivery of the residue of the quantities specified in the bill of lading, not actually received.

And the fact that he was aware of the variance after a part and before the whole of the goods accepted by him were received, does not deprive him of this right.

Nor does the receipt of such part of the cargo by the assignee work acceptance of the goods not enumerated in the bill of lading, nor render him liable for freight upon the whole cargo, but only for freight upon the portion actually received by him under the bill of lading.

James P. Byrne, as assignee of the claim and rights of Patrick Fegan, himself the assignee Thomas Fegan, brought this action against Jacob Weeks, Jr., in the New York superior court to recover the freight on coal transported by Thomas

IV.—40

Fegan from Port Carbon, Pennsylvania, to the port of New York,—freight on coal so transported which the defendant converted to his own use while subject to the lien of the plaintiff's assignor, for freight and for demurrage. The answer set up a counter-claim for goods mentioned in the bill of lading (under which the defendant received the goods alleged in the complaint to be delivered), not delivered to the defendant.

The facts proved at the trial were that Thomas Fegan executed a bill of lading, representing that one Moore shipped on board Fegan's canal boat seventy-eight tons egg coal, and one hundred tons stove coal at Port Carbon, which Fegan undertook to deliver at New York, to Moore or his assigns, they paying freight at the rate of one dollar and ninety cents per ton and ten dollars per day demurrage for any detention longer than three days. The defendant, at the port of discharge, before the arrival of the boat, bought the cargo of coal of Moore, and took an assignment of the bill of lading. When about ten tons of egg coal had been delivered to the defendant at New York, it was discovered that the boat contained only seventy-eight tons of stove coal but had on board one hundred tons of egg coal. The master delivered about seventy-six tons of egg coal and about forty-nine tons of stove coal, and then refused to deliver more unless the defendant would accept the residue of the egg coal on board. This the defendant refused to do, but demanded the residue of the stove coal and offered to receive enough of the egg coal to make up seventy-eight tons; and also offered to receive the kinds specified in the bill of lading, and the quantity of each therein specified.

There was no detention of the boat beyond the lay days occasioned by any want of readiness on the part of the defendant to receive the coal called for by the bill of lading.

The value of stove coal was greater than that of egg coal.

Fegan demanded freight on the whole one hundred and seventy-eight tons, payment of which being refused, he sued the defendant therefor in the marine court and recovered judgment. He issued execution thereon and had it levied on the coal in the boat, as being the defendant's property, and caused the coal to be removed to a coal yard, for storage, where it was subsequently sold to pay for the storage. At this sale

Byrne *v.* Weeks.

the defendant bought it. The judgment obtained by Fegan was reversed and a new trial ordered.

Mr. Justice WOODRUFF, before whom, without a jury, the case was tried, decided that the defendant was liable for freight only upon the coal actually delivered ; and was entitled to a deduction from the amount thereof, equal to the value of the coal not delivered, but called for by the bill of lading ; and ordered judgment for the plaintiff for the difference.

*The superior court*, at general term, were of opinion that the plaintiff's assignor was estopped from denying that he had received the goods specified in the bill of lading, since by his representations therein he had enabled the consignee to obtain value thereupon from the defendant. He was therefore liable for the non-delivery of the articles of merchandise enumerated. And even if an action would not lie at the instance of the shipper of the goods or his assignee against the owner of the boat for non-delivery of those described in the bill of lading, because they had never been shipped, yet the shipper's assignee must in equity be allowed to recoup damages arising under the same contract, upon which an action is brought by the owner of the boat or his assignee, the latter being estopped by the allegation in the bill of lading, from showing that he had not the goods described therein. The acceptance of part of the articles will not preclude such a claim. 3 *Wend.* 236 ; 5 *Hill*, 63.

The receipt of part of the cargo after the discovery of the variance between it and the bill of lading, did not in legal contemplation amount to an acceptance of the whole cargo as it actually stood, nor did it make the defendant liable for the freight upon the whole. The discrepancy was not, as had been urged, one of quality, but of quantity, and a contract as to quantity is divisible, 10 *East*, 295 ; *Addison on Contracts*, 484 ; so that the defendant was not obliged to tender back the part which corresponded with the bill of lading, in order to recover damages for the non-delivery of the residue in the form which the litigation had taken.

Delivery of the portion of the goods withheld, on the sale to the defendant to pay storage, did not constitute a delivery under the bill of lading.

The acts of the master of the boat in regard to the coal stored showed an intention on his part to abandon his lien thereon for the freight money. Moreover, they were delivered to the storekeeper as the property of the defendant. The storekeeper's lien also was paramount to the lien for freight.

Upon these grounds the judgment rendered at special term was affirmed, with costs.

The plaintiff appealed.

*F. Byrne,* for plaintiff, appellant.

*B. Slosson,* for defendent, respondent.

Denio, Ch. J.—By the bill of lading, the owner of the canal boat, whose rights are represented by the present plaintiff, admitted the receipt on board of one hundred tons of stove coal, and seventy-eight tons of egg coal, and he agreed to carry it to New York, and to deliver it there to Moore the shipper, or to his assigns, on payment of the agreed freight. This admission and agreement enabled Moore to dispose of the quantity and kind of coal mentioned to any person who chose to purchase them from him, and the defendant became such purchaser in good faith, and for a valuable consideration. The defendant, by such purchase, became entitled as against the owner of the boat, to receive coals of the quantities and kinds mentioned, on the sole condition of paying the freight agreed on. Instead of there being on the boat when it arrived at New York, the quantity of the stove coal represented in the bill of lading, there was only seventy-eight tons of such coal, but there was an excess of the egg coal, beyond that which was represented in the bill of lading, of twenty-two tons. It seems probable that that was a mistake in filling up the paper by which the figures representing the different descriptions of coal were transposed. But it appears that these different descriptions of coals were known in market by the names used, and that the egg coal was of less value than that called stove coal.

When the error was discovered, it would have been very easy to have adjusted the affair without material loss on either side if a conciliatory spirit had prevailed. But each party claimed

what he considered to be his strict rights, and this led to a controversy, and to a long litigation, in the course of which each has no doubt expended a sum equal to the whole value of the cargo of coals; and after ten years of controversy we are called upon as a court of last resort to determine what were the rights of the respective parties. We think they are as follows: The defendant as the purchaser for value of the bill of lading was entitled to have delivered to him at New York, the quantities and kinds of coals described in that document, and Mr. Fegan was the party on whom that obligation rested. By signing the bill of lading, he enabled Moore, the consignee, to deal upon the faith of the coal being on board, and upon the duty of Fegan to transport it to the city. The deficiency was in the stove coal; there were only seventy-eight tons of that article, instead of one hundred tons as stated in the bill. The defendant was not obliged to abandon the purchase, and repose upon his remedy against Moore, and against Fegan. A part performance was practicable, and that the defendant was entitled to, without discharging his claim in respect to the part which could not be performed.

As to the egg coal, there was sufficient on board to answer the requirements of the bill of lading, and a surplus. He was entitled to his seventy-eight tons, and he was under no obligation to purchase the residue, or to pay freight on that which he did not receive. He waived nothing by claiming and receiving the delivery of that which belonged to him, even though he knew that the entire performance as to the other description of coal could not be made.

In fact the defendant received nearly fifty tons of the stove coal, and the master refused to deliver any more of that description unless the defendant would receive the whole of both kinds. He moreover received nearly the whole of the egg coal which the contract called for, the deficiency in that being only two or three tons.

The court adjusted the plaintiff's claim, by allowing him the freight at the rate agreed on for the coal actually delivered, and charged him with the value of the remainder, which he was bound to, but did not deliver; and gave judgment against the defendant for the balance. This, I think, was correct.

The claim for demurrage was properly disallowed. The detention of the boat being shown to be without fault on the part of the defendant, and the time necessary for discharging was wholly due to the default of the plaintiff in not performing according to the exigency of his compact, and to the foolish controversy which ensued, in which he was legally in the wrong. The defendant did not detain the boat.

There is no ground for charging the defendant with the balance of the coal on account of his purchasing it at the sale for non-payment of storage. It was found in the posssion of the owner of a coal yard, who claimed a lien on it for storage, and a right to sell it to satisfy that lien. The purchase under that sale was not a receipt of the coal, under the contract. He paid the amount of his bid. Whether he acquired a good title or not is not now a question.

I think the case was legally disposed of by the superior court, and its judgment must be affirmed.

All the judges concurred, except BROWN, J., absent.

Judgment affirmed, with costs.